## MURRAY AND BELL *vs.* THE STATE.

[INDICTMENT FOR BURGLARY.]

1. *Burglary; description of house broken into; what sufficient.*—A count of an indictment for burglary which describes the house alleged to have been broken and entered with burglarious intent, as "a building, belonging to the estate of John Whiting, deceased, in which goods, merchandise, &c., are kept for deposit," is sufficient, when it pursues the form laid down in the Revised Code.

2. *Same; count for burglary; by what not vitiated.*—A count in an indictment which alleges that the intent to steal with which the building was broken and entered, is not bad, because it also alleges that the intent was executed by a larceny of goods in the building.

3. *Juror; peremptory challenge of; how long remains open.*—On the trial of a felony, the defendant's right to a peremptory challenge of a juror is to be kept open until the juror is actually sworn. An acceptance (inadvertently made, by the defendant,) of a juror may be withdrawn, and the juror peremptorily challenged at any time before he is actually sworn.

4. *Stolen property, possession of, recent and unexplained; what evidence of.*—Possession of goods stolen from a house a short time after the theft, is competent evidence of the theft, if this possession is not shown to be innocent, and if the theft was connected with a burglary it is also competent evidence, so far as it goes, of the burglary also.

APPEAL from the City Court of Montgomery.
Tried before Hon. JOHN D. CUNNINGHAM.

The appellants, Murray and Bell, were indicted for burglary and grand larceny in separate counts of the same indictment.

The first count was *nolle prossed*. The second count charged a burglary committed in "a building belonging to the estate of John Whiting, in which goods, merchandise," &c., "were at the time kept for deposit," &c. The third count charged, that the appellants "broke into and entered a building belonging to the estate of John Whiting, deceased, in which goods, merchandise, silver ware, table service, furniture, clothing and trunks were at the time kept for deposit, and feloniously took and carried away three dozen silver tea-spoons, three dozen silver spoons, ten dozen silver napkin rings, four silver ladles," &c. &c., "of the value of more than one hundred dollars, the personal property of Mrs. Georgia E. Saffold," against the peace, &c. The fourth count was the same as the third, with the exception that it alleged that the breaking and entering was done "with the intent to steal."

There was a demurrer to the indictment as a whole—1st, because of a misjoinder of counts; it charging offenses not of the same character and not subject to the same punishment. There was also a demurrer to each count in the indictment—1st, because there was no legal averment of the ownership of the building; 2d, because there was no sufficient description of the building broken and entered,

The demurrers were overruled, whereupon the defendants pleaded not guilty. The bill of exceptions recites that "while the jury was being empanneled, and after a number of jurors had been challenged by the State and by each of the defendants, and before the jury was complete, and before the challenges of the State or either of the defendants had been exhausted, the counsel for the accused stated that he had discovered that one David Campbell was among the jurors, who had been accepted by both the State and the defense. Defendant's counsel then asked leave to peremptorily challenge said David Campbell,

whereupon the solicitor objected that the challenge came too late; that the counsel for the defendants had both expressed themselves as being satisfied with the jurors, as far as empanneled, and that Campbell was one of those jurors, which was a fact. Thereupon the counsel for the defendants stated to the court, that they had objected to said Campbell the moment they had seen him on the jury; that in passing upon the jurors, who were in two rows, one row behind the other, some were standing and some sitting; that the counsel had not noticed that said Campbell was on the jury when they answered satisfied; that they saw said Campbell while sitting in the other panel before the jury was ordered to be empanneled, and immediately decided to challenge said Campbell if he should be put upon the jury; and they further stated that they would have challenged him if they had seen him when he took his seat upon the jury; that they were appointed by the court to defend the accused, and asked that the defendants should not be prejudiced by the mere inadvertence of counsel whom they had no voice in choosing, and that the defendants were unwilling to have said Campbell on the jury."

"The court decided that said Campbell was regularly on the jury, and had been accepted both by the defendants and the State, and no objections had been made to him until the other jurors had been called and some of them passed upon by the State; but further announced to the defendants that if they would specify any objections to the juror, the court would allow them to challenge him notwithstanding. The defendants did not urge any objections to the juror, but still insisted that they had a right to peremptorily challenge him. The court refused to allow them to challenge said juror, and the defendants duly excepted."

The breaking and entering of the building, and its ownership as laid in the indictment, were proved. The proof showed, in substance, that the property mentioned in the indictment had been placed in trunks, which were deposited, in the latter part of 1870, in the house which was entered,

and that the silver was seen for the last time in the trunks about the 15th of November, 1870, the last time they were inspected before the burglary, and shortly before Christmas the trunks were in the house, apparently undisturbed. On January 11th, 1871, Mrs. Saffold received a telegram from Selma enquiring if she had lost the silver-ware mentioned in the indictment, and on looking at the building it was discovered that it had been broken and entered, the trunks rifled, and the silver-ware stolen, &c. On January 11th, 1871, the defendants were apprehended in Selma, which is 45 miles from Montgomery, trying to sell the silver-ware, which was identified as that mentioned in the indictment, to a jeweler. They enquired at the time of the sale for crucibles, such as are used in melting metals, but being unable to buy any, returned with the silver-ware, the names on some of it having been erased and scratched, and some of the spoons and other things having been broken, &c., so as to give it the appearance of old silver. On some of the silver-ware, however, the names had not been erased or obscured.

The only explanation defendants gave of their possession, was that they "had bought it from a man on the Selma, Rome & Dalton railroad." There was no proof that the defendants had ever been in Montgomery prior to their being brought there under arrest. The ownership and value of the personal property and the venue were proved. It was also shown by W. H. Graves, one of the administrators, that the estate of John Whiting was in the hands of his administrators and not finally settled; that $20,000 of property remained on hand to be distributed; that all debts had been paid, but that Whiting was bondsman for one Pollard on an administration bond for several hundred thousand dollars, and might be liable on that account, as also on a $4,000 indebtedness for which the estate, in certain contingencies, might be liable. On neither of these matters, however, had any liability yet been fixed against the estate, nor had any claim on account of the same been filed or presented, &c.

The defendants, among other charges which were given, requested the following, which the court refused to give, and to which refusal the defendants excepted:

1st. If the jury believe the evidence of the witness Graves, they can not find the defendants guilty of burglary, as charged in the indictment.

2d. If the jury believe the estate of Whiting was solvent at the time of the burglary, and that all the debts had been paid, and that there was a balance of assets to the amount of $20,000 in the hands of the administrators for distribution, then the building described in the indictment does not vest in the estate of John Whiting, deceased, but in his heirs.

3d. Unless the jury are satisfied beyond all reasonable doubt that the possession by the defendants (of the property alleged to have been stolen) was a recent possession, then the jury can not find the defendants guilty of any offense.

4th. If the evidence in this case is such as to permit the jury reasonably to believe that the house was broken two months before the silver-ware was found in the possession of the defendants, then the defendants' possession was not recent, and the jury must find the defendants not guilty.

The jury found the defendants guilty of burglary as charged in the indictment, and they were sentenced accordingly, and hence this appeal.

The ruling of the court as to the juror Campbell, the refusal of the charges asked, and the overruling of the demurrer, are now assigned as error.

JONES and FALKNER, for appellants.—1. The demurrer should have been sustained.—18 Ala. 358; 20 Ala. 83; 6 Ala. 664   Anderson's case does not militate against this. There was a *description* of the building entered.

2. The challenge to Campbell should have been allowed. 2 Nevada, 232; 3 Iowa (G. Green) 216; 4 Ohio, 350; 9 Fla. 215; 24 California, 11; 5 Leigh (Va.) 715; 1 Denio, 310; 2 Chandler, 181.

3. The charges asked were correct expositions of the law applicable to the evidence, and should have been given.

Attorney-General GARDNER, and SAYRE & GRAVES, *contra.*
1. *Anderson v. The State,* at January term, 1873, is conclusive as to the demurrer.

2. There is conflict in the authorities as to the right of peremptory challenge under the circumstances detailed in the bill of exceptions. The best exposition of the law on this subject is found in the case of *State v. Patton,* 18 Connecticut, p. 166, and upon that case we rely. The practice contended for by appellants would embarrass the administration of justice, and would give defendants more than their rights.

3. The principles settled in *Anderson's case, supra,* show that the charges as to the ownership of the building were properly refused. The other charges as to recent possession were either abstract, or sought to take away from the jury the determination of the question whether, under the evidence, the possession was recent, and have the court determine it as pure matter of law.—3 Greenl. Ed. § 32.

PETERS, C. J.—The first questions presented in this prosecution, as matter of error, arise on the demurrer to the indictment. The charge is burglary. The first count was abandoned. This left only three others still remaining—the 2d, 3d and 4th. The second count is in these words:

"The grand jury of said county further charge, that before the finding of this indictment, George Murray and Richard Bell broke into and entered a building belonging to the estate of John Whiting, deceased, in which goods, merchandise, silver-ware, table-service, furniture, trunks and clothing, were, at the time, kept for deposit, with intent to steal, against the peace and dignity of the State of Alabama."

The objection to this count seems to be, that it does not

describe the "building" alleged to have been entered with sufficient legal accuracy. We think this objection is not well taken. The house was not a dwelling-house. It was merely a "building in which goods, merchandise, &c., were kept for deposit." This is the language used in the statute.—(Rev. Code, § 3695; *Ib.* p. 811; Forms of Indictments.) This is a sufficient description of the place where the goods were kept.—(Rev. Code, §§ 4112, 4119.) The allegation of the ownership of the building is not an element of the crime, and reference to it is only to increase the accuracy of the identity of the building. That it was a part of the estate of John Whiting, deceased, was a sufficient description of the ownership. Precise accuracy in this particular is not required.—*Anderson v. The State, ante,* p. 665; see, also, Rev. Code, § 4127.

This objection is also made to the third and fourth counts, but for like reasons as the above it must fail. In addition to the facts stated in the statutory form of an indictment for burglary, the third and fourth counts in this case allege that the intent to steal was consummated by an actual theft. This does not vitiate the indictment. *Wolf vs. The State,* June term, 1873. The demurrers, then, were properly overruled.

I next proceed to dispose of the question raised upon the defendants' right to a peremptory challenge of a juror, which was refused them in the court below. Undoubtedly this is a right that may be waived by the prosecution or by the defendant.—*Murphy vs. The State,* 37 Ala. 142; also, *Lyman vs. The State,* 45 Ala. 72. In the former case last above cited, the court say: "The prisoner has no right to complain that the State forbears to exercise the right to challenge," as it is a matter of election, and may or may not be indulged. And in the latter case it is said that the right is one regulated by law. These determinations show that until the right to challenge is waived it should be enforced. We are now called on to consider what amounts to a waiver of this right, which should bind the party making it? This question has not heretofore been pre-

cisely settled by any direct adjudication of this court. It is reasonable to conclude, that in a waiver, as in a contract, the intent of the party making it, is the principal thing. When this intent is based upon a presumption, this presumption is very much weakened, if it appears that the presumed waiver is injurious or likely to become injurious to the party making it, particularly when it involves the liberty of the persons making the waiver in unexpected peril. The bill of exceptions shows enough to make it evident, that the defendants did not intend to waive their right of challenge as to Campbell as a juror. Their peremptory challenges were not exhausted. They were evidently taken by surprise in finding him retained on the panel of their triors. They had not in fact elected him for this important purpose. They had not given any intelligent and intentional acceptance of his election as a juror in the case. Blackstone lays down the rule at common law to be this, as to the mode of challenges: "Where the trial is called on, the jurors are to be sworn as they appear to the number of twelve, unless they are challenged by the party."—4 Bla. Com., marg. p. 352, 353. This evidently means that the right of challenge is open until the juror is sworn. Under this rule, if the objection comes before the juror is sworn, it comes in time. If it comes in time, it must be allowed.—Rev. Code, § 4178. Here this was the case. I do not think there was any intelligent and intentional waiver before this time, in this case.

The admitted conflict of decision on this question in the different States of the Union, and the great and jealous tenderness which the law indulges towards the life and liberty of the citizen, seem to justify this court in giving this rule its most liberal interpretation. We, therefore, adopt the unanimous declaration of the Supreme Court of Ohio, and say, that the right of the peremptory challenge of a juror in a prosecution for a felony involving the liberty of the accused, in favor of the defendant, should be held open for the latest possible period—to-wit, "up to the actual swearing of the juror."—*Hooker v. The State*, 4 Ohio,

348, 350; also, *Bac. Abr. Jury; People v. Bodine*, 1 Denio, 281; *Commonwealth v. Hendricks*, 5 Leigh, 709, and cases cited in appellant's brief.

There is nothing in the refusal of the charges asked by the defendants on the trial below which would justify a reversal. These charges asked a construction of the evidence, which was not justified by any well settled legal principles. The description of the building which was entered with burglarious intent was sufficient, as has already been shown in discussing the demurrer, which involved this question. And the possession of the goods taken from the building broken by the burglars was competent evidence of guilt, when not so explained as to show that it was an innocent possession.—1 Greenleaf Ev. § 34. The evidence tended to show that the house was broken and entered late in November or December, 1870, and that the goods were not shown, by the prosecution, to be in the defendant's possession until in January, 1871. It is insisted that such a possession is not sufficiently recent as to justify the jury in resting a conviction upon it. I know no rule of evidence that circumscribes such facts to this extent. Unexplained possession of the stolen articles is evidence of guilt. And it is for the jury to say whether it is sufficient or not. They are the judges of its force. If the defendants committed the theft of the goods, and the goods were in the house broken, as the proof shows, this was evidence of the burglary as well as the larceny. And the jury could give it what force they thought fit. The court could not exclude it by a charge. This latter purpose seems to have been the object of the defendants in asking the charge on this point, which was refused.

For the error in refusing the challenge as above shown, the judgment of the court below is reversed and the cause is remanded for a new trial in conformity with law.

SAFFOLD, J., not sitting.

NOTE BY REPORTER.—The opinion in this case was delivered at the June Term, 1873. It is here inserted by direc-

tion of the Chief Justice, in advance of the other opinions delivered at the same term, as it settles an important question of practice in the criminal law.