199 So.2d 682

**Houston Kenneth KILPATRICK**

**v.**

**STATE.**

**8 Div. 73.**

Court of Appeals of Alabama.

Feb. 21, 1967.

Rehearing Denied March 14, 1967.

J. N. Powell, Jr., Decatur, for appellant.

Richmond M. Flowers, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

CATES, Judge.

This appeal came on for submission on briefs without oral argument November 17, 1966.

Kilpatrick was charged by the Grand Jury in a true bill of stealing a 1964 model Cadillac worth $6,600.00, the property of Milton Peek. Code 1940, T. 14, § 331, as amended. He came on for trial December 8, 1965, on a plea of not guilty, was found guilty by a jury and the trial judge thereupon adjudicated him guilty of grand larceny.

Kilpatrick applied for probation. On January 4, 1966, the matter came on again. Kilpatrick withdrew his request for probation and the court, after allocutus, sentenced him to eight years in the penitentiary.

## I.

### Facts

We paraphrase in substance the statement of facts in the appellant's brief:

Milton Peek testified that he has been in the automobile business in Decatur for some 32 years, and that during June, 1964, one Cadillac automobile belonging to him came up missing from his establishment. He testified as to the serial number of the car, and that the automobile was returned to him approximately two weeks later by the Decatur Police. He also testified that he did not know who took the car. [Peek valued the car at $6,686.70.]

Carl Young of the Huntsville Police Department testified that he saw appellant driving a 1964 white Cadillac on Highway 72 in Huntsville into the parking lot at King's Inn Motel. He also testified that the appellant was then arrested for theft of the Cadillac, but that he did not know that appellant stole the Cadillac.

Robert Owens of the Huntsville Police Department also testified that he saw the appellant drive a white Cadillac into the parking lot at King's Inn Motel, and that he was arrested shortly afterwards. He testified that he could not say that appellant took the car.

Joe Patterson, also a member of the Huntsville Police Department, identified two keys as being the ones in the Cadillac which appellant drove into the parking lot at King's Inn Motel. He testified that he did not know whether the car appellant was driving was stolen or not. He testified that he did not know who stole the car belonging to Mr. Peek.

The last witness for the State was Bobby Newsom, who testified that he turned a Cadillac over to Mr. Peek, but he did not testify that the serial number was checked to insure that the Cadillac returned to Mr. Peek was the same one which Mr. Peek testified was missing.

The appellant did not take the stand, and no witnesses appeared on his behalf.

The Attorney General's brief asked that the following be added:

"During the direct examination of Mr. Peek, the witness testified that the automobile which was returned to him was the one that was stolen from his car lot. He also testified that the automobile was stolen from his car lot on the night of June 4, and was returned to him around the 18th of the same month.

"During the direct examination of Sergeant Owen, he testified that appellant stated that he had never before seen the white Cadillac automobile; and that he had just driven into the motel parking lot to look it over.

"During the direct examination of Bobby Newsom, he testified that he delivered the Cadillac to Mr. Peek after he had examined it and checked the serial numbers."

## II.

### Presumption Arising from Possession

Pollock & Maitland, History of English Law, refer frequently to the "handholding thief," a related description of which is now encapsulated in the expression of one's being "caught red handed." See 2 Coke's Inst. 188.

In our modern law of larceny, we still recognize manucaption as a showing of theft. Wolf v. State, 41 Ala. 412; see also Bolling v. Kirby & Bro., 90 Ala. 215, 7 So. 914. Larceny being an offense against possession essentially is directed against not merely enjoyment or handling of a thing, but against the possessor's legal right to exclude others from interfering with his actual enjoyment or entitlement to enjoy.

In addition to "actual" possession, we employ the term "constructive" possession, an expression which is capable of causing confusion because "possession" itself is a concept of a relation between a person and a thing vis à vis other persons, e. g., dominion and exclusion. However, here we can lay aside considerations of "imperfect" possession. Blakeney v. State, 244 Ala. 262, 13 So.2d 430.

Viewed from verdict, Kilpatrick, in driving on U. S. Highway 72, Memorial Drive, and into the car park of the King's Inn at Huntsville was in "complete, independent, and absolute possession and control of [the car], adverse to the rights of [Peek] therein." Blakeney, supra (hn. 5).

The crux of this case devolves on whether this observed possession denotes stealing. By retroduction from June 18 to June 4, was the jury allowed too long a span of time?

In Maynard v. State, 46 Ala. 85, we find approval of the following charge:

" * * * 'if the defendant had possession of the horse said to have been stolen, and did not explain said possession, it was prima facie evidence of his guilt, and the jury might convict if they thought proper.' * * * "

This instruction was disapproved in White v. State, 72 Ala. 195, because it omitted "recent."

The watch stolen in *White,* supra, disappeared in April, 1881, and it reappeared "shortly afterwards," in the same month, when the defendant was trying to sell it. The opinion remarks:

"It is not every or any possession of stolen goods by a party, which will authorize the inference of his complicity in the crime of larceny or burglary; nor, in fact, every such unexplained possession, although it may be exclusive, as opposed to the idea of a joint possession with others. Another element is necessary in order to constitute a guilty possession. It must be recent, or soon after the commission of the offense to which it has reference.—Henderson v. The State, 70 Ala. 23 [45 Am.Rep. 72]; 1 Greenl.Ev. § 34; Whart.Cr.Ev. § 758; Clark's Cr.Dig. §§ 97, 145, 635; Murray & Bell's Case, 48 Ala. 675; Crawford's Case, 44 Ala. 45.

"What is meant by 'recent,' is incapable of exact or precise definition, and the term has been said to vary, 'within a certain range, with the conditions of each particular case.' Whart.Cr.Ev. § 759. There are cases, no doubt, so clear in nature, and undisputed in facts, as that the court could pronounce the possession recent, as matter of law; but the ques-

tion is usually one of fact for the determination of the jury. * * *"

In the breaking and entering in Gray v. State, 19 Ala.App. 315, 97 So. 124, there was an overlapping period. The owner missed his shirts in September. The search which brought them to light was some time between the 21st and 28th of that month.

Seemingly, this period of time was considered appropriate for the jury to decide as being "recent" or not.

In Jackson v. State, 167 Ala. 77, 52 So. 730, from November, 1906, to sometime before Christmas, 1906, was for the jury to consider as recent or not. The opinion cites, Thomas v. State, 109 Ala. 25, 19 So. 403, and 1 Mayfield's Dig. 582, et seq.

While a current year's white Cadillac car is perhaps not so rare as to be indelibly conspicuous, yet we think it would be more readily remembered than another more common brand. We consider that the period from June 4 to June 18 does not make possession on the later date "too remote" in time as a matter of law which would require setting aside the verdict.

### III.

Appellant refers us to Nelson v. State, 29 Ala.App. 121, 192 So. 594, where we find:

" * * * the State necessarily had to rely for a conviction upon the rule of evidence to the effect that the possession of goods, recently after a larceny or burglary, which were stolen in the commission of the offense, imposes on the possessor of such stolen goods the onus of explaining his possession. However, it is elementary that before the above rule can be invoked it is incumbent upon the State to first offer evidence to support the essential element, to the effect that the goods found in defendant's possession were the identical goods stolen at the time of the commission of the burglary. And in the instant case no such proof was adduced. The alleged injured party,

Arcadia Johnson, in describing the stolen meat, testified: 'There were four sides and two hams of the meat.' The only other witness who attempted to describe the meat, Mrs. Deal Smith, stated 'there were three hams and four middlings gone out of the smokehouse.' As stated, the testimony of these two witnesses, coupled with that of witness O. W. Pope, was sufficient to establish the corpus delicti. But no testimony was adduced, or attempted so far as the record discloses, which showed or tended to show that the meat admittedly taken by the two parties and left with witness Charlie Boswell was the identical meat stolen from Mr. Pope's smokehouse, or even that it consisted of 'side meat, middlings and hams.' Charlie Boswell testified: 'They had some meat in a sack,—an osnaburg cotton-sack. I never looked in the sack, and do not know what kind of meat it was.' Non constat, the meat in the sack may have been of an entirely different kind of meat. An assumption that it was the stolen meat complained of, may not be indulged; nor could suspicion, conjecture, or surmise, be substituted for the legal evidence necessary to establish the fact."

In 1965 we reversed a circumstantial evidence burglary conviction in Daw v. State, 42 Ala.App. 642, 176 So.2d 49. Therein, after stating the rule laid down in *Nelson,* supra, we applied it as follows:

"In the instant case the State failed to show that the pecans which appellant sold to O'Farrell shortly after the burglary were identical to, or the 'same kind' as those stolen from Hall's store. O'Farrell described the pecans he purchased from appellant as 'large seedlings.' Hall described the pecans stolen from his store as 'extra large seedlings.' No other testimony was adduced or attempted, so far as the record shows, which showed or tended to show that the pecans which appellant sold to O'Farrell were identical to the pecans stolen. It was established.

by State's evidence that seedling pecans are not a uniform class or variety of pecans but that they 'vary a great deal from seedling to seedling.' Further, it was shown that Hall was not the only person in the community who could raise seedling pecans. Neither this court nor a jury can assume that seedling pecans are a distinct variety, uniform in size, color, weight, etc. Suspicion, conjecture, or surmise cannot be substituted for the legal evidence necessary to establish the fact that goods in the defendant's possession immediately after a burglary are identical to those stolen. Here, it does not appear that the seedling pecans in appellant's possession were even the same size as those allegedly stolen."

■ The jury was at liberty to infer that Mr. Peek identified the car he got back from the Decatur Police Department as being the one taken from his lot.

Mr. Newsom testified as to his interrogation of the defendant in June, 1964, in part:

"Q Where did you see him in connection with that investigation?

"A Police Department, City Hall, here in Decatur.

"Q Did you question him on that occasion?

"A Yes, sir. I did.

"Q I will ask you if at that time and on that occasion you or anyone in your presence or hearing offered him any inducement, hope or reward, or promise, to get him to make a statement?

"A No, sir.

"Q Did you offer to intimidate him, threaten to harm him, or threaten him any hurt in an endeavor to get him to make a statement?

"A No, sir.

"Q Did he tell you where he lived?

"A Yes, sir. He told me he lived at Route 5, Cullman.

"Q Did you question him about this Cadillac of Mr. Peek's?

"A Yes, sir. I did.

"Q Was that Cadillac then at your police station or somewhere else?

"A It was at the police department.

"Q Did they—did you deliver that Cadillac after you examined it and checked the serial numbers on it to Mr. Peek or elsewhere?

"A Turned it over to Mr. Peek.

"Q What did this defendant have to say about that Cadillac Automobile when you questioned him about it?

"A Said that he had never seen it before, first time he ever saw it was at King's Inn Motel at Huntsville, Alabama.

"Q What did he say he was doing there at the King's Inn Motel there at Huntsville, Alabama with that Cadillac?

"A He denied being with the Cadillac. He said he was at the King's Inn Motel to do some gambling and he was looking the car over and admiring it when a small army of police officers arrested him.

"Q That he was just looking at it?

"A Yes, sir.

"Q Never had seen it before then?

"A That is correct.

"Q Did you ask him whether or not he was driving it that day or did that come up or did he say anything about it?

"MR. POWELL: We object to leading.

"THE COURT: Sustained. Don't lead.

"Q Did you ask him who was driving?

"A. Yes, sir. I asked him if he had driven it.

"Q What was his response to that?

"A Said he had never been in it before."

 While Newsom's questioning was without any warning of either the right to be silent or to have counsel, we find nothing inculpatory of the theft in Kilpatrick's answers. He did admit to gambling. However, not all gambling is a public offense. Town of Boaz v. Jenkins, 32 Ala.App. 299, 25 So.2d 394.

Therefore, we consider that we do no violence to the evidence in saying that Kilpatrick did not—from Newsom's testimony—either directly or indirectly inculpate himself in this conversation.

Hence, none of the following cases apply: Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908; Sims v. State of Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (Jan. 23, 1967); Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; Beecher v. State, 280 Ala. 283, 193 So.2d 505.

 We do think that Newsom's testimony clearly rests on the Cadillac he returned being the same one found at the King's Inn Motel in Huntsville. Mr. Owen of the Huntsville Police testified he saw Kilpatrick driving the Cadillac he turned over to the Decatur officers. This coupled with other evidence that Kilpatrick was driving it in Huntsville sufficed to make a prima facie case.

## IV.

### Reference to Co-Felon

One Billy Jack Curtis drove into the King's Inn parking lot in another car at about the same time as did Kilpatrick in the Cadillac. He walked over to the Cadillac. Both were arrested.

In opening argument, the court reporter's transcript shows the following:

"MR. POWELL: We object to this and ask for a mistrial in this court; that he said that Billy Jack Curtis threatened to shoot a man, and he is not on trial in this court room. I think it is improper and prejudicial.

"THE COURT: I will sustain that. If I tell you not to consider something, can you gentlemen erase it from your mind and forget it? You understand I have the duty to preside over the conduct of the trial and what is admissible and what is not.

"Sometimes people differ on what they think is admissible. I have to say. If I am wrong a higher court can reverse me. If I say to you to disregard something, can you all do that? Let me see the hands of somebody that can't. All right. Can you all follow the Court's directions on the law? Anybody that can't? I see no hands. All right. Disregard that now at this time, and let's just briefly state what you expect the evidence to prove.

"MR. HUNDLEY: Our theory of the law, Your Honor,—

"THE COURT: I understand.

"MR. HUNDLEY:—will be activities on the part of conspirators to hide the crime.

"THE COURT: I don't think we ought to go into detail at this time on that. I have ruled. That is the end of that Let's move along.

"MR. POWELL: Judge, I would like to ask for a mistrial on the grounds—if I may give them; that the solicitor stated that a party not a defendant in this suit had threatened to shoot some law officer and we feel that that is highly prejudicial to my client and on the minds of the jury.

"THE COURT: *I am not sure what was said. That is not the way I heard it, but I am not going to say.*

"MR. POWELL: Well, the record shows.

"THE COURT: I will just say *that is not what I understood him to say.* I

have told the gentlemen of the jury—I have asked them if any of them can not follow the Court's instructions and disregard the illegal testimony to raise their hand. None raised their hand. I presume they can. I say to you disregard that. I will overrule the motion for a mistrial.

"MR. POWELL: We except." (Italics added.)

 In view of the above italicized remarks of the trial judge, there is no concensus between the court and counsel as to what precisely the prosecutor said. Hence, without more the charge to disregard was enough to cure.

We conclude by referring to Code 1940, T. 15, § 389. Thereunder, we have read the entire record without presumption, and consider that the judgment below is due to be

Affirmed.