202 So.2d 170

**Billy Jack CURTIS**

v.

**STATE.**

**8 Div. 94.**

Court of Appeals of Alabama.

Aug. 29, 1967.

J. N. Powell, Jr., Decatur, for appellant.

MacDonald Gallion, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

CATES, Judge.

This appeal was submitted on written argument February 23, 1967. Curtis appeals from a judgment of conviction of grand larceny of a Cadillac. The court sentenced him to ten years in the penitentiary.

This is a companion case to Kilpatrick v. State, 43 Ala.App. 667, 199 So.2d 682, 683. The outline of the testimony there gives a sketch of the tendencies of the evidence in the case of instant concern. However, we refer to the significant differences where claims of error arose from Curtis's trial.

The State called Mr. Joe Denny, a used car dealer in Huntsville. He testified that "around about the first of June" 1964 he had conversations with Curtis regarding Curtis's sale to him "of various new Cadillacs."

A then anonymous man had telephoned Denny (R. 86) that he could sell Denny as many new Cadillacs as he could handle "at a substantial savings." Denny made an ap-

pointment to meet the telephone caller. There he encountered Curtis.

The two repaired to a nearby cafe. Denny related Curtis's opening remarks as follows:

"That he had some that he would like to sell at a price where it would be so low that a person could make considerable on them and specifically the two door hardtops and Cadillacs could be quoted at $1,500.00."

Denny testified that a hardtop Cadillac would have then ordinarily sold for more than $5,000.00.

On the day of Curtis's being arrested with Kilpatrick at the motel parking lot, Denny was at Gibson's Bar-B-Q, cater-cornered from the King's Inn. His evidence was (in part):

"Q What arrangements had you made with this defendant about delivering that car? What had he said about delivering it in that conversation where he agreed to deliver it to the King's Inn Motel.

"A Do you mean how much money I was to pay for it?

"Q How was it to be delivered and how were you to pay for it?

"A The car was to be at King's Inn Motor Hotel parking lot and he was to come across to the Gibson's Bar-B-Q place when he got the car there and I was to meet him at a certain hour and then would pay him $1,250 for the car.

"Q Pay him $1,250 for the car. How were you to know what car it was at King's Inn?

"A He was to identify the car, plus the fact that he gave me a tag number that had come off of a car at a salvage yard.

"Q He gave you the tag number first?

"A Right."

After Curtis was arrested, Denny related that Curtis had made threats against him.

One time Curtis told him he was going to shoot his guts out. Another time he alluded to Denny's having "notified the fuzz * * and at night at your home or your place of business [Curtis or his] friends would take care of" Denny.

It is clear that Denny's reference to "the fuzz" meant law officers. Cf. "fustigate" from L. fustis, a stick.

The defense put on no evidence.

As to Curtis's purported threats as given in Denny's testimony, appellant's brief argues:

"* * * the trial court erred in overruling defendant's motion for a mistrial following a statement of the Solicitor that 'we want to show tampering by this defendant with this witness and threats.' (Trans. p. 93) Appellant contends that this remark is of such prejudicial nature as to require a reversal in this case in order to further the ends of justice and enable the Appellant to have a fair trial based only on the evidence which the State might be able to present against him. Such statement as enumerated above no doubt gave the jurors a bad opinion of the Appellant aside from any legitimate evidence which might have been adduced against him. Certainly the statement of the Solicitor could have had no effect other than presenting an adverse picture of the Appellant, and the motion made by Appellant at the time of the statement should have been granted. The statement had no bearing upon the elements of the offense with which the Appellant was charged. The Appellant was entitled to a fair trial on the merits of the case, uninfluenced by appeals to passion or prejudice, and the Solicitor should have confined his statements to the evidence in the case and to inferences properly to be drawn therefrom and should have avoided appealing to the prejudice of the jury. Appellant takes the position that at no time subsequent to the statement of the Solicitor could he have received a fair trial. * * *"

 We concede that, if the jury believed Denny's testimony of Curtis's offering to shoot Denny's guts out, the logical inference was prejudicial.

However, it was not invidiously so since the testimony was admissible as revealing a consciousness of guilt because of the apparent attempt to suppress evidence. McElroy, Evidence (2d Ed.), § 190.02; 29 Am.Jur.2d, Evidence, § 293; Anno. 62 A.L.R. 136, wherein a number of Alabama cases are cited.

At the outset of the trial, defense counsel moved for a continuance because of Mrs. Curtis's having a gallstone operation. The motion was denied.

In brief, it is contended that the anxiety arising from his spouse's surgery put him under a great deal of pressure. In consequence, it is contended that Curtis was unable to adequately assist his counsel.

We note that Curtis was first arrested in June, 1964. He was indicted in December, 1964, first arraigned November, 1965, and had his case regularly continued until finally tried July 6, 1966. The record shows that he had attendance of counsel as early as November 26, 1965.

 Prima facie, he had ample time to help his lawyer prepare his case. He had more time than the defendant in Ex parte Craft, 41 Ala.App. 519, 138 So.2d 266. We hold that there was no abuse of discretion by the court below on the mere showing of the wife's illness which, while no doubt disturbing, was nevertheless a collateral vicissitude of life.

 We find no error in admitting in evidence, over objection, the two keys, one of which was in the ignition lock when the stolen Cadillac was recovered. That a witness could not—two years later—make positive identification was modified by his testimony that in his "best judgment" they were the keys he took out of the Cadillac. This made the answer one of credibility rather than admissibility.

 The answer that the witness, Vernon Lee, "didn't directly put him [Curtis] under arrest" removed any possibility of error in the defense contention that the court should have sustained objection because the State had not first shown Lee to be present. Supreme Court Rule 45.

 The fact that the defendant never was shown to be personally in manucaptive control of the Cadillac is not alone a bar to his conviction. Denny's testimony was that Curtis contracted to deliver a car the price of which was so inordinately cheap as to support belief that it was stolen. That Curtis worked through an agent or confederate by whatsoever name called, renders him no less guilty.

We have carefully considered the entire record under the requisites of Code 1940, T. 15, § 389, and consider the judgment of conviction is due to be

Affirmed.