ON REHEARING
The appellant was indicted on a charge of breaking into and entering an automobile, the property of Suzanne Mary Michaleck, with the intent to steal. A jury returned a verdict finding him guilty of burglary upon which the trial court entered judgment and sentenced the appellant to two years in the penitentiary. The appellant is represented by retained counsel both at trial and on appeal.
Suzanne Mary Michaleck lived in an apartment building which is part of the University of Alabama student housing complex in Birmingham, Alabama. At approximately 9:00 o'clock on the evening of October 9, 1975, she parked and locked her light blue 1973 Volkswagen on the University parking lot adjacent to her apartment building.
At 2:00 o'clock the following morning Ms. Michaleck was awakened by a University security officer and the building manager. She went into the parking lot and saw her car at another parking space from where she had parked it. There was a wire from the engine coil into the back seat and connected to the car battery. This is commonly referred to as a "hot wire" and serves the purpose of allowing one to start an automobile without having a key. The lock button on the door had scratches on it. The steering wheel and column had been lowered and some bolts were on the floor of the car. The steering mechanism contained a lock. By disassembling the column and dropping it, the steering wheel was made functional. The owner's manual was missing out of the glove compartment.
At approximately 1:20 A.M., October 10, 1975, Officer Bob Roseberry, University of Alabama Police, was patrolling alone in the area of Ms. Michaleck's apartment. He noticed a man standing on the corner. He circled the block, returned, and saw the appellant. He saw a light blue late model Volkswagen. The engine was turning over and the appellant was in the car.
Officer Roseberry again circled the block stopping for a short time to check the security of another building. When he returned to the same area he saw Officer Fred Armstead of the University of Alabama Police Department talking to the appellant and John Seifert. There was a light blue Volkswagen in front of Armstead's car which looked like the car Officer Roseberry had seen on the street.
On this same date at approximately 1:30 A.M. Officer Armstead was patrolling the University area alone. He saw Seifert standing next to a gray 1964 Chevrolet. Officer Armstead circled the block and saw the appellant "walking from the Volkswagen". When he saw the appellant he was about three feet from the Volkswagen walking toward the gray Chevrolet. The door on the driver's side of the Volkswagen was open.
Armstead stopped in the parking lot and the appellant and Seifert approached his vehicle. Seifert identified the Chevrolet as *Page 5 
his automobile. Officer Armstead saw a ratchet, beer cans, and a Volkswagen owner's manual on the floorboard of the Chevrolet. The manual contained Ms. Michaleck's name. There was dirt, grease, and grime on the hands of the appellant.
The appellant testified in his own behalf. He disclaimed any knowledge of the charged crime and maintained that he was in the parking lot to meet a girl named Linda for whom he had been waiting since 8:00 or 8:30 that evening. Before arriving he and Seifert had put two new mufflers on Seifert's Chevrolet.
The appellant testified that his hands were "always" dirty because he did part-time service station work. The appellant's father verified this.
 I
The appellant alleges that error was initially committed when the trial judge asked defense counsel, in the presence of the jury, if the accused was "going to be sworn".
 "THE COURT: We will have all the witnesses sworn now before we have opening statements. (WHEREUPON, witnesses were brought into the courtroom at which time, the following proceedings were had and done:)
"THE COURT: Is the defendant going to be sworn?
 "MR. HOWARD (Defense Counsel): We except, if Your Honor, please. Mr. Davis' father is seated.
"THE COURT: The defendant? Is he going to be sworn?
 "MR. HOWARD: We except to that statement, Your Honor, please. We don't care to have him sworn at this time.
"THE COURT: That's your privilege."
* * * * * *
 "Let the record show that the defendant was not sworn, at his request, at this time."
It is argued that these statements of the trial judge violated the constitutional rights of the appellant under the Fifth Amendment to the Constitution of the United States ("No person shall be . . . compelled in any criminal case to be a witness against himself."), Section 6 of the Constitution of Alabama, 1901 (The accused has a right "to testify . . . if he elects to do so.") and Title 15, § 305, Code of Alabama 1940 ("On the trial of all indictments, . . the person on trial shall, at his own request, but not otherwise, be a competent witness;").
The generally accepted rule is that the trial judge should not comment upon the failure of the accused to testify although the judge may properly instruct the jury on the right of the accused not to testify. Turner v. State, 238 Ala. 352,191 So. 396 (1939); Pairrett v. State, 26 Ala. App. 198, 155 So. 880
(1934). We know of no rule of law prohibiting a trial judge from asking a defendant if he is going to be sworn at any particular time in the course of a trial. The statements to which we have referred simply do not constitute a comment on the failure of an accused to testify. The judge is not clairvoyant. See Holt v. State, 46 Ala. App. 555, 246 So.2d 85
(1971).
This court recognizes and upholds the fundamental right against self-incrimination. The trial judge did not request the accused to testify and made no adverse remark when he declined to be sworn. Indeed the judge recognized his privilege not to be sworn. We find as a matter of fact and law that the remarks of the trial judge are not within the coverage of the authorities cited by the appellant.
 II
The appellant contends that it was error for the trial court to admit a "hot wire" into evidence where a sufficient chain of custody was not established and where there was no testimony identifying that wire as the identical wire seen on the Volkswagen.
The wire itself merely showed how the crime was committed and tended to show the existence of an intent to steal the car. The wire did not incriminate or connect the appellant to the commission of the crime. *Page 6 
There were no fingerprints on the wire or characteristics which would indicate that it belonged to or was used by the appellant. In and of itself it was not an element of the offense charged (as would be narcotics on a charge of possession) nor did it tend to connect the accused to the crime (as would a blood-stained weapon found on the accused or a fingerprint laden instrument used in the commission of a crime).
We have carefully considered the testimony of the witnesses. In view of their testimony that the wire was "similar" or "identical" to the wire found at the scene of the crime it is our opinion that the wire was properly admitted into evidence. While no officer could state as a matter of personal and absolute knowledge that the wire was, in fact, the very same wire removed from the Volkswagen, the evidence of similarity was sufficient to warrant the submission of the question to the jury as to whether it was or was not, in fact, the wire removed from the automobile. Washington v. State, Ala.Cr.App.,339 So.2d 611 (1976); Means v. State, 51 Ala. App. 8, 282 So.2d 356
(1973); James v. State, 17 Ala. App. 490, 86 So. 131 (1920);Stinson v. State, 238 Ala. 240, 190 So. 275 (1939);Higginbotham v. State, 262 Ala. 236, 78 So.2d 637 (1955); Billsv. State, 49 Ala. App. 726, 725 So.2d 706 (1973); Robinson v.State, 49 Ala. App. 511, 273 So.2d 487 (1973); Curtis v. State,44 Ala. App. 63, 202 So.2d 170 (1967); Smith v. State, 282 Ala. 268, 210 So.2d 826 (1968).
Counsel's argument that the wire was admitted without the showing of a proper chain of custody is also without merit. Testimony reveals that Officer Johnson removed the wire and gave it to Sergeant Strunk who kept it under lock and key until the morning of the trial. At that time he gave the wire to the district attorney who introduced it into evidence at trial.
 III
An investigating officer testified that he "ran" the tag number of an automobile to get the full name of the girl named Linda for whom the appellant allegedly had been waiting. That same officer further testified that he was not able to find Linda. We distinguish this case from Berry v. State,46 Ala. App. 308, 241 So.2d 336 (1970). The officer did not testify to any conversation he had with a non-witness or to anything which he learned from "running" the tag. His testimony was properly admitted.
 IV
The trial judge sustained objections by the state to questions by defense counsel designed to elicit testimony concerning the size and number of residential units in the area, whether the appellant was at any time seen carrying any object, and whether any formal charge was ever made against the appellant constituting the offense for which he was told he was arrested. Also defense counsel was cut off from eliciting details concerning the presence of any other individuals in the area and details concerning the size of the parking lot and the vehicles parked there.
Alabama favors the traditional "wide open rule" giving the cross examiner the right to elicit any fact relevant to any issue under the pleadings of the case, including a fact relevant to the cross examiner's own affirmative case. Gamble,McElroy On Evidence, 3rd Ed., p. 813, § 438.01 and pp. 286-7, § 136.01. Yet it is within the discretion of the trial court to reasonably limit the range of cross examination in respect to collateral and irrelevant matters or with respect to matters that unnecessarily consume time in the trial of a case. A trial is not meant to be "an eternal phenomenon". Buckelew v. State,48 Ala. App. 411, 265 So.2d 195 (1972).
Defense counsel was thorough, persistent, and exhaustive in his cross examination. His manner, as reflected in the record, reveals him to be a craftsman in the difficult and disappearing art of effective cross examination. However at times his questioning was repetitious and argumentative. Many of the state's objections were due to be sustained simply because counsel had already obtained the sought after information *Page 7 
in one form or another. On this matter we have examined every error assigned by the appellant as we have every issue presented by this appeal. It is the opinion of this court that counsel was not unreasonably or illegally hindered in his cross examination.
 V
The appellant contends that it was error for the trial court to deny the efforts of defense counsel to show on cross examination of the evidence technician that the technician had available to him the assistance of other experts, equipment and labs which were used for gathering, identifying, examining and preserving evidence.
In view of the officer's testimony that the facilities of the Birmingham Police Department were not available at that time of the morning the action of the trial court was not error. Defense counsel proved that the officer did not seek outside assistance. Any inferences from this failure were properly for argument to the jury.
 VI
It is asserted that the trial court failed initially to determine that an investigating officer was a fingerprint expert. There was no abuse of discretion in allowing Officer Strunk to testify as an expert. The court stated that, "It is for the jury to say how much of an expert that person is in the field in which he is testifying". The state then qualified the officer with no further objection by defense counsel.
The question of whether or not a particular witness will be allowed to testify as an expert is largely discretionary with the trial court, whose decision will not be disturbed on appeal except for palpable abuse. Kozlowski v. State, 248 Ala. 304,27 So.2d 818 (1946). The officer was properly qualified and it is within the province of the jury to measure the weight and correctness of opinions given by experts. Wilson v. State,243 Ala. 1, 19, 8 So.2d 422 (1942). No legible fingerprints were discovered and the trial court properly instructed the jury in its oral charge on the subject of expert testimony. For all these reasons we find the action of the trial court to be without error.
 VII
An investigating officer testified that he saw the appellant "walking from a Volkswagen". It is asserted that this constitutes a conclusion of the witness and defense counsel's objection was due to be sustained. The officer was merely stating what he saw. Any possible error was cured on cross examination when defense counsel adduced testimony as to exactly what the officer saw and that he only saw the accused three feet from the Volkswagen walking toward another car. Rule 45, Alabama Rules of Appellate Procedure.
 VIII
Finally appellant argues that the cumulative effect of all the errors committed during his trial resulted in a denial of his rights to a fair and impartial trial by due process of law. A defendant is entitled to a fair trial but not a perfect one.Lutwak v. United States, 344 U.S. 604, 619, 73 S.Ct. 481, 490,97 L.Ed. 593 (1953). We find that the appellant did receive a fair and impartial trial. His constitutional rights were admirably protected by both defense counsel and the trial judge.
Initially this court affirmed the judgment of the trial court without opinion. Title 13, § 66, Code of Alabama 1940. On application for rehearing the appellant filed a motion pursuant to Rule 39 (k), Alabama Rules of Appellate Procedure. This opinion is in response to his request.
We have responded to the major arguments in the appellant's brief. Additionally we have considered other arguments advanced by the appellant and reviewed the record for error.
APPLICATION FOR REHEARING OVERRULED; OPINION ISSUED.
All Judges concur. *Page 8