249 So.2d 882

**J. C. FRANKLIN, alias,**

**v.**

**STATE.**

**4 Div. 28.**

Court of Criminal Appeals of Alabama.

April 20, 1971.

Rehearing Denied May 18, 1971.

James M. Prestwood, Andalusia, for appellant.

MacDonald Gallion, Atty. Gen., and Jasper B. Roberts, Asst. Atty. Gen., for the State.

ALMON, Judge.

Appellant and Fred Stanley were indicted jointly by a Covington County Grand Jury for buying, receiving, concealing, or aiding in concealing, stolen property. Both men were convicted in separate trials and appellant was sentenced to ten years in the penitentiary. Stanley's conviction was affirmed by this court in Stanley v. State, 46 Ala.App. 542, 245 So.2d 827, 1970, and is now pending in the Alabama Supreme Court on certiorari.

The State's first witness, Norman Dismukes, a resident of Hanes City, Florida, testified that his boat disappeared in July of 1968. He described his boat as an eighteen foot fiberglass Sea Breeze. The hull of the boat was white with blue on the nose, front, and top and had "Miss Ruth" painted on it. It was powered by two 1961 forty horsepower Evinrude outboard motors. The boat and motors were on a cream colored "Murray" trailer. Dismukes reported the boat's disappearance to the Hanes City police.

Dismukes next saw his boat around the latter part of August at the Covington County Courthouse in Andalusia. He came to Andalusia at the request of Sheriff P. R. Gantt to identify the missing rig. Dismukes testified that it was his boat, that it had the same outboard motors on it,

that it was on the same trailer and that it had been repainted aqua green with a white top.

Chief Deputy Sheriff Arell Berry testified that in mid-August he found an eighteen foot fiberglass boat with two Evinrude motors at Mr. Wiggins' body shop in Opp and that he brought the boat to Andalusia where it was later returned to Dismukes. He further testified that earlier that month he saw a rig of the same general description with "Miss Sue" written on its hull on the premises of the Gantt Amvet Club of which appellant was proprietor.

Harold Hixon testified that in August he painted "Miss Sue" on a boat for appellant. He said the boat had "motors" on it, indicating that it had more than one motor.

Clarence Wiggins testified that in August he painted a boat which had two Evinrude motors on it and a trailer in his shop in Opp and that about three days later the sheriff took possession of the boat. He further stated that the boat had a good coat of paint on it before he started painting it. Wiggins said he did the work for Fred Stanley but this fact was excluded from the jury's consideration on motion of appellant.

Wayne McCart testified that he was working for Wiggins at the time and, upon sanding the boat preparatory to painting it, he found the names "Miss Ruth" and "Miss Sue," one on top of the other, painted on the boat's hull.

State Investigator R. C. Taylor, the State's final witness, testified that on August 6 he saw an eighteen foot fiberglass boat made by Lynncraft with two forty horsepower outboard motors mounted on a trailer under a shed at the Amvet Club. The following day Taylor talked to appellant about the boat. After proper predicates were laid, Taylor testified that appellant said he did not know how the boat got there, that probably some of his friends might have brought it there and parked it under the shed, that he did not know how it got there, and that he did not know how it left.

On August 20 Taylor had another conversation with appellant. On this occasion an F. B. I. Agent was with Taylor. Again, after proper predicates were laid as to Miranda, etc., Taylor testified that appellant stated that he got the boat from one Danny Paul who wanted $1,400.00 for it. Appellant stated he kept the boat for two or three weeks until he heard that Danny Paul was mixed up with a stolen truck and tractor and that he then called Paul and told him to come get the boat. Appellant further stated to Taylor that he took the boat to Harold Hixon and had "Miss Sue" painted on its hull.

At the conclusion of the State's case, appellant moved to exclude the evidence and for his discharge contending that the State had failed to prove a prima facie case. This motion was denied.

Appellant called several witnesses in an effort to substantiate his explanation for having possession of the boat in question. According to appellant's testimony, he talked to Danny Paul about buying the boat and Paul brought the boat to his place and offered to sell it for $1,400.00. Appellant stated that some four or five days later he "tried the boat out" and the motors did not run properly and that he had them tuned up and they ran perfectly. Appellant further testified that he took the boat to Harold Hixon and paid him to paint his daughter's name, "Miss Sue", on the hull of the boat. Later, according to appellant, Danny Paul came by the Amvets Club and wanted to know if "I wanted to close the deal out" and that he (appellant) told Paul that if there was any connection between the boat and the heavy equipment (which previous testimony indicated was stolen) he did not want to buy the boat. Appellant further stated that he never did buy the boat.

On cross-examination, it developed that appellant paid his business partner, Lester Williams, to register the boat at the probate office. Appellant stated that he did not know in whose name the boat was registered. The registration certificate which

was introduced in evidence showed the boat to be registered in the name of Lester Williams.

 Evidence that the property listed in the indictment has disappeared from where the owner left it without his knowledge or consent, together with evidence that the owner reported its disappearance to the police was sufficient for the jury to infer that the property was stolen. Tanner v. State, 37 Ala.App. 256, 66 So.2d 827.

The facts and circumstances were sufficient for the jury to conclude that appellant had possession of the stolen rig. Whether his explanation for having possession was sufficient was also for the jury. Ellis v. State, 43 Ala.App. 157, 182 So.2d 910. There was no error then in the denial of the motion to exclude the State's evidence or in the refusal of the affirmative charge.

 It is argued that the trial court was in error in reading to the jury Tit. 14, § 338, Code 1940, which includes the phrase "or having reasonable grounds for believing that it has been stolen," because the Code form indictment charged that appellant knew the items were stolen and omitted any allegation that he had reasonable grounds for believing that the items were stolen.

This precise question was dealt with in Lindsey v. State, 23 Ala.App. 411, 128 So. 209, cert. denied 221 Ala. 175, 128 So. 210, and Farzley v. State, 26 Ala.App. 387, 163 So. 393, cert. denied 231 Ala. 60, 163 So. 394. Despite the somewhat confusing language of these decisions, in each instance both the then Court of Appeals and the Supreme Court held that the Code form indictment was broad enough to cover the charge in the statute.

 The fact that no order of severance appears of record does not constitute reversible error. Palmer v. State, 15 Ala. App. 262, 73 So. 139.

The judgment appealed from is due to be

Affirmed.