287 So.2d 916

**Wallace L. CHARACTER**

v.

**STATE.**

**7 Div. 188.**

Court of Criminal Appeals of Alabama.

Sept. 28, 1973.

Rehearing Denied Oct. 30, 1973.

William J. Baxley, Atty. Gen. and David W. Clark, Asst. Atty. Gen., for the State.

Merrill, Merrill, Vardaman & Williams, Anniston, for appellant.

HARRIS, Judge.

From a conviction of buying, receiving, concealing, etc., stolen property, appellant brings this appeal. The property involved was a black heifer calf valued at $100.00. He received a three-year sentence in the penitentiary and is free on bond pending appeal.

At the conclusion of the state's case, appellant moved to exclude the evidence adduced by the state which motion was overruled and denied. Appellant, in writing, requested the affirmative charge which the trial court refused to give the jury. Appellant also filed a motion for a new trial which was likewise overruled and denied. These motions and request put us squarely to a studious consideration of all the evidence in the case.

Willis Lee Johnson testified that he was engaged in cattle farming as a sideline in partnership with Mr. Irby Bannister doing business under the firm name and style of Bannister & Johnson and used the initials "B & J" to denote the partnership.

He testified that he personally bought five animals—two cows with calves and

one cow—from Carroll County Livestock Sales Barn, Inc., Carrollton, Georgia, on December 27, 1971, and transported them by truck to their cattle farm near Oxford, Calhoun County, Alabama, south of Interstate 20, right below Oxford Lake. He was given a bill of sale at the time of purchase. The bill of sale was introduced in evidence. He unloaded them in a lot near a barn on the farm which he managed for the partnership.

On January 21, 1972, around 4:00 P.M. he went to the barn to feed the cattle. He found one calf missing and a cow "bawling". The missing calf was in the pen with its mother the previous afternoon. A search for the calf proved fruitless and he called the Oxford Police Department to report the probable theft of the calf. He described the calf as being unusual as to its color and markings—stating "it was a black calf with a white face, and it had black rings around its eyes, and its ears were partly white, and that's unusual." He further said the calf had a white looking mark on its back where the sales tag had been glued on it. He talked to police officer Johns in making the missing report.

Later that night Johnson got a call from officer Johns to come to Police Headquarters. He and his wife drove to the Headquarters in his pickup truck. Johns and some other officers drive to a trailer park which was owned by appellant. They were followed by Johnson and his wife. There was a store and service station at the trailer park. The store had a sign which bore the name "Character Store" or "Character Service Station". Behind this building and adjacent to it was a pen made out of planks, which was partly covered by a roof fastened in some fashion to the building. In this pen was the calf owned by the partnership. Johnson, in the presence of several Oxford police officers, identified the calf and he was told to put the calf in his pickup truck and take it with him. Some of the officers followed the truck to Johnson's cattle farm and were present when the calf was put in the lot where the

"bawling" cow was located. The calf went straight to the "bawling" cow and started sucking and the mother cow stopped "bawling" as she was contented and happy over the reunion. Every country boy knows that a cow knows her own calf and a calf will seek out its mother in a big herd. Dumb animals know their off-spring like a mother knows her own baby. Identification of this "lost" calf was so positive by the reunion as not to admit of any doubt. Officer Johns followed the pickup truck to the farm and also witnessed the reunion of cow and calf.

The officers advised Johnson to go by Headquarters and issue a warrant for appellant and he did.

A photograph of the calf was made by one of the police officers and after proper identification was introduced in evidence. This photograph was identified by officer Johns as being the same calf that he saw in the pen behind Character's Store. Another photograph of the same calf standing beside its mother was also introduced in evidence. The state introduced in evidence a copy of a 1971-1972 license issued to "Character Service Station, Route 2, Box 21, Oxford, Alabama." This address was the place where the calf was found in the plank pen adjacent to the building above described. The state also introduced in evidence a copy of an assessment card from the office of the Tax Assessor of Calhoun County showing the property where the calf was found in the pen behind the store building was assessed in the names of Wallace L. and Juanita F. Character.

Appellant did not offer himself as a witness in the case. His wife testified in his behalf. She said her husband's name was Wallace Lee Character and his nickname was Jackie; that he was employed at Lee Brothers Foundry and his hours of employment were from 4:30 A.M. to 3:00 P.M. six days a week; that he worked these same hours on January 20 and 21, 1972, and arrived home at 3:30 P.M. and did not leave the premises at all on these dates;

that her husband was not out of her sight after he got home; that he went to bed around 6:30 or 7:00 P.M. as he had to get up to go to work at 3:00 A.M.; that her husband owned the trailer park, the store and service station, but he did not operate the store and service station. These were rented to Mr. Harlin Brown, who lived in one of the trailers in the park. She knew about the plank fence or pen behind the store building, but to her knowledge there were no animals of any kind in this pen on January 20 or 21, 1972; that the pen had a door but it was never closed as children played in the pen.

Two other witnesses testified in behalf of appellant, Mr. Harlin Brown and his son-in-law Samuel T. Williams. They both said they helped Mr. Character build the pen in back of the store so that Mr. Character could put two pigs in it; that Mr. Character owned the store and service station and the trailer park; that other people living in the park used this pen for ponies, chickens and geese. They did not know that a calf was in this pen until the night that Mr. Johnson, his wife and several police officers came to the place. According to Mr. Williams, he heard Mr. Johnson say he thought the calf was his but he was not too certain about it.

In sum, the tendencies of the evidence for the defense was to the effect that several people living in the community owned cattle. These cattle frequently got out of pens, pastures or enclosures and almost anyone could have put this particular calf in appellant's pen without his knowledge or consent.

Appellant's major contention on this appeal is expressed in his brief as follows:

"It is the contention of Appellant that the State of Alabama totally failed to make out a prima facie case of the charge contained in the indictment that the Appellant did buy, receive, conceal, or aid in concealing one black heifer calf. Indeed, there is no evidence offered by the State of Alabama to show that Appellant ever had any knowledge of the whereabouts of the calf removed from the pen on property to which he and his wife held title as joint tenants.

"The State of Alabama utterly failed to show that the Appellant bought the said calf. The State of Alabama utterly failed to show that the Appellant received the said calf, and the State of Alabama utterly failed to show that Appellant concealed or aided in concealing the said calf. There being no evidence that Appellant had any knowledge of the whereabouts of said calf, there is likewise no evidence that Appellant knew the same to be stolen. To the contrary, there is evidence both from the State's witnesses and the defense witnesses that other animals were in the pen, and that the pen had previously been used by a number of people in the trailer park or community to house various animals from ponies to ducks, to turkeys, to geese. In the absence of the showing of any actual knowledge on the part of Appellant that the black calf was stolen, then there would be no reason that Appellant should know that the same was stolen in light of the prior use of this pen."

In Franklin v. State, 47 Ala.App. 62, 249 So.2d 882, this Court said:

"Evidence that the property listed in the indictment has disappeared from where the owner left it without his knowledge or consent, together with evidence that the owner reported its disappearance to the police was sufficient for the jury to infer that the property was stolen. Tanner v. State, 37 Ala.App. 256, 66 So.2d 827.

"The facts and circumstances were sufficient for the jury to conclude that appellant had possession of the stolen rig. Whether his explanation for having possession was sufficient was also for the jury. Ellis v. State, 43 Ala.App. 157, 182 So.2d 910. There was no error then

in the denial of the motion to exclude the State's evidence or in the refusal of the affirmative charge."

■ It is the law of this state that the unexplained possession of property does not raise the presumption that the property was stolen. There must be other evidence of the corpus delicti. When this has been shown, and the stolen property, soon after the offense, is found in possession of a person, who is unable to give a satisfactory explanation of his possession, then the jury is authorized to infer his guilt. Orr v. State, 107 Ala. 35, 18 So. 142; Buckles v. State, 291 Ala. 352, 280 So.2d 814 (1972).

■ The requisite scienter for the crime of receiving stolen property may be inferred from the recent possession of stolen goods. Stanley v. State, 46 Ala.App. 542, 245 So.2d 827.

In *Buckles,* supra, our Supreme Court cited with approval the following quotation from the case of Aron v. United States, 8 Cir., 382 F.2d 965, 970:

"The doctrine that possession of recently stolen property gives a permissible inference of knowledge on the part of the possessor that the property had been stolen, unless the possession thereof is accounted for in a reasonable and satisfactory manner consistent with the circumstances of the possession, is a factually sound and a necessary evidentiary rule. Without this evidentiary rule in criminal cases it would be almost impossible to consider for conviction any of the possessors or fences of stolen property unless they admitted that they knew the property to be stolen, which is an admission not likely to be forthcoming."

■ Under the evidence in this case, the guilt vel non of appellant was for the jury and this court is without warrant to disturb the verdict of the jury. Accordingly, the case is due to be affirmed.

Affirmed.

All the Judges concur.