305 So.2d 387

**Estel H. STOKES, Jr.**

v.

**STATE.**

**I Div. 535.**

Court of Criminal Appeals of Alabama.

Dec. 17, 1974.

James B. Watson, Monroeville, for appellant.

William J. Baxley, Atty. Gen., and Joseph G. L. Marston, III, Asst. Atty. Gen., for the State, appellee.

HARRIS, Judge.

Appellant was put to trial upon a two-count indictment, (1) buying, receiving, concealing, or aiding in concealing stolen property, and (2) grand larceny. The jury returned a verdict of guilty under Count 1 of the indictment.

Omitting the formal parts, Count 1 reads as follows:

"The grand jury of said county charge that before the finding of this indictment Estel H. Stokes, Jr., whose name is to the grand jury otherwise unknown, did buy, receive, conceal, or aid in concealing, 104 feet of 24-gauge under ground telephone cable; 66 feet of 24-gauge aerial telephone cable; 508 feet of 22-gauge aerial telephone cable, of the value of $666.00, the personal property of Monroeville Telephone Co., Inc., a corporation, knowing that it was stolen, and not having the intent to restore it to the true owner."

He appeared at arraignment with employed counsel and pleaded not guilty. Before trial the court ascertained that he was unable to employ counsel and the court appointed a lawyer to represent him at trial

and the same lawyer was appointed to represent him on appeal. He was furnished a free transcript.

The Monroeville Telephone Company had a storage lot adjoining the house and lot where appellant lived. The company had numerous rolls of wire of all types stored on this lot which was used in its business. The company took inventory of the wire on this lot in September, 1973, and again on February 4, 1974, and found no wire missing.

On March 26, 1974, a police officer of the City of Monroeville received a tip from an informer, who had proved reliable many times in the past, that appellant had some rolls of wire in the trunk of his car that belonged to the Monroeville Telephone Company. Acting on this informer's tip, the officer contacted a deputy sheriff who got in the patrol car with the police officer. They both knew appellant. They saw him driving his car in downtown Monroeville and when he stopped for a traffic light, the deputy sheriff walked over to appellant's car and asked to see his driver's license. Appellant informed the deputy that he did not have a driver's license and he was arrested for operating an automobile on a public street without a license. He was told to drive to the police station.

When they got to the police station, the deputy told appellant they had received information that there was some cable or wire in the trunk of his car and he asked appellant if he would open the trunk for him and appellant said he did not have a key. The officer asked to see his switch key and he gave the officer his key ring and the trunk key was on it. The officer opened the trunk in the presence of appellant and saw rolls of telephone cable. The officer then and there gave appellant the *Miranda* rights and warnings and he said he did not want to sign anything or make any statements, saying, "I rather talk to a lawyer." The officer did not ask appellant any questions. Appellant voluntarily told the officer that if he would check the gulley out on West Pine Street in front of

where he lived, that was where this cable was supposed to have been picked up from and there was supposed to be some more in the gulley. The officers went out and checked the gulley as directed by appellant and they did not find any cable there. They did find some old wire in the gulley but it was not telephone cable and it was not copper wire.

Appellant testified that a friend, Curtis Ripley, from Clarksville, Tennessee, was at his house in March, 1974, and wanted him to go with him to an area behind an old grocery store across the street from his home and he went with him. He said they found some rolls of cable right behind the old store and they picked it up and carried the rolls to his home but his wife and sister-in-law would not let him keep it in the house as the rolls had mud on them, so they put the rolls in the trunk of his car. He further testified that he was going to melt it down and sell it.

Appellant's wife and sister-in-law both testified that on the late afternoon of March 25, 1974, they were sitting on the front porch of their home and saw appellant and Curtis Ripley coming across the street from an old abandoned grocery store behind which was a junk or dump gulley and they were carrying a large roll of cable wire and they put it in the trunk of appellant's car. These women saw appellant and Ripley go back across the street and return with another big roll of cable or wire; that one man was on one side of the roll and the other man was on the opposite end and it took both men to carry both rolls of cable. The last roll was put in the trunk of appellant's car with the first roll. The women testified the cable was red or copper as they could see the cut ends of the rolls. Appellant's sole defense was that they just picked up abandoned cable or wire.

Upon discovering the rolls of cable and wire the officer contacted an engineer for the telephone company and he came to the police station and identified the rolls as the property of the Monroeville Telephone

Company that the company used in its construction of telephone lines. He identified three types of cable. He testified that in the trunk of the car were 104 feet of 24-gauge underground telephone cable, 66 feet of 24-gauge aerial telephone cable, and 508 feet of 22-gauge aerial telephone cable, all of the aggregate value of $666.00. He further testified:

"Yes, we took—this cable has markings on it every two feet—a certain number—and we can determine the length of it by the numbers and, of course we took the numbers off of the cable at the police station and then we made this inventory and compared it and found these cables were missing from the reels and the same numbers we found at the police station, we compared those with the cables in the yard."

This witness testified that upon inspecting the cables at the police station it was obvious that the cables had been "chopped off"; that company employees needing cable used hacksaws to saw off the cable and then taped the ends back to the reels. He said that no employee of the company had used any cable from the storage yard since the last inventory was taken on February 4, 1974. After leaving the police station he went to the company's storage yard and found that a reel of cable on the back side of the storage lot had been moved from the original position it was in during the February inventory. Cables had been "chopped off" and the ends matched the cables in the trunk of appellant's car at the police station.

■ It is the law of this state that the unexplained possession of personal property does not raise the presumption that the property was stolen. There must be other evidence of the corpus delicti. When this has been shown, and the stolen property, soon after the offense, is found in possession of a person, who is unable to give a satisfactory explanation of his possession, then the jury is authorized to infer his guilt. Orr v. State, 107 Ala. 35, 18 So. 142; Buckles v. State, 291 Ala. 352, 280 So.2d 814; Franklin v. State, 47 Ala.App. 62, 249 So.2d 882; Character v. State, 51 Ala.App. 589, 287 So.2d 916.

■ The requisite scienter for the crime of receiving stolen property may be inferred from the recent possession of stolen goods. Stanley v. State, 46 Ala.App. 542, 245 So.2d 827.

In *Buckles*, supra, our Supreme Court cited with approval the following quotation from the case of Aron v. United States, 8 Cir., 382 F.2d 965, 970:

"The doctrine that possession of recently stolen property gives permissible inference of knowledge on the part of the possessor that the property had been stolen, unless the possession thereof is accounted for in a reasonable and satisfactory manner consistent with the circumstances of the possession, is a factually sound and a necessary evidentiary rule. Without this evidentiary rule in criminal cases it would be almost impossible to consider for conviction any of the possessors or fences of stolen property unless they admitted that they knew the property to be stolen, which is an admission not likely to be forthcoming."

■ The search of the trunk of the automobile *may well* have been justified under Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419. Appellant was lawfully arrested for driving an automobile on a public street without a valid permit or license. It is true that after appellant was in custody at the police station there was plenty of time for the arresting officer to have obtained a search warrant and he should have done so and thus put to rest any question as to the constitutional question presented under the circumstances of this case. But even if the search was not constitutionally valid we are unable to reach the issue. There was no motion to suppress the evidence of the officer who entered the trunk of the car with appellant's key, and no motion to suppress the introduction of the cable and wire found in

the car and no objection to the identification of the stolen property by the engineer for the telephone company.

■ Further, there was no motion to exclude the state's evidence; no motion for a new trial; no request for the affirmative charge; no exceptions reserved to the oral charge of the court, and no adverse rulings of the trial court on the admission of evidence in the trial of the case. In this state of the record nothing is presented for review and this court is without warrant to disturb the verdict of the jury. Accordingly, the judgment of conviction is affirmed. Eady v. State, 48 Ala.App. 726, 267 So.2d 516; Grant v. State, 46 Ala.App. 232, 239 So.2d 903.

Affirmed.

ALMON, TYSON and DeCARLO, JJ., concur.

CATES, P. J., concurs in result.