BOOKOUT, Judge.
Buying, receiving, concealing, etc. stolen property; sentence: two years imprisonment.
The State’s evidence tended to show that on November 3, 1975, about 3:00 P.M., Joyce Scott’s 1974 green Ford pickup truck was stolen from the parking lot of Woolco in Midfield. Mrs. Scott said the value of her truck on that date was “about thirty-five hundred dollars.”
Approximately 7:00 P.M. on the day Mrs. Scott’s truck was stolen, appellant brought a 1974 green Ford pickup truck to Auction City, U.S.A., in the Eastwood Mall area of Birmingham in Jefferson County. Appellant there sold the truck to Gene Schmitt for $1,665.00. Schmitt, a used car dealer, took the truck to his automobile lot in Leeds, Alabama. During the night of November 4, 1975, the truck was stolen from Schmitt’s lot.
Later in November of 1975, a green 1974 Ford pickup truck was found under water in a strip mine pit near Trussville in Jefferson County. The truck was raised on November 10 and taken to Glendale Farms near Trussville. It was heavily damaged while it was being removed from the pit. The authorities searched the vehicle on November 10 and 12 for serial numbers, but they had been obliterated. On November 17, Officer Thomas H. Cook found some wet charge receipts of Mackinaw’s Service Station, Inc.
Officer Cook took the receipts to Joyce Scott who recognized them as gas tickets she had signed and placed in the ashtray of her truck. Six charge receipts were introduced into evidence. Five were charges to “Joyce Glenn,” and one was to “Joyce Glynn.” Four were signed by “Joyce Glenn” and two by “Wayne Glenn.” Joyce Scott testified that she maintained a charge account at Mackinaw’s in her maiden name, “Joyce Glynn,” even after she married. She acknowledged that her signature was on the receipts. Scott also said she allowed her brother, Wayne Glynn, to charge gasoline on her account. She testified that he had given her the two receipts that were signed by him and that she had placed them in her truck’s ashtray with her other charge receipts.
Joyce Scott identified the truck, which was removed from the strip mine pit, as the one taken from her. The truck taken from the pit met the general description Scott gave of her truck. Scott based her identification primarily on glue in the shape of a footprint she said was left from an orange footprint shaped sticker which was on her dashboard, a dent in the back of the truck which according to her was from when her husband hit “the steps”, and “skint places” on the back of the truck which she said were due to the putting on and taking off of a wood “camper”. However, Scott testified that the truck she identified was different from hers in the following major respects: it had whitewall tires rather than the blackwall tires which were on her truck; the truck had a different license tag; it appeared to have been waxed; and *70 the truck had been “wrecked,” while her truck had not been damaged except for the dent.
During Scott’s testimony, five photographs were admitted into evidence. Four showed the truck which was removed from the strip mine pit and one showed Joyce Scott with her truck. A comparison of the photograph of Scott’s truck and the photographs of the truck taken from the strip mine pit shows that each truck depicted was a Custom, F-100, Ford pickup truck of the same shade of green.
The truck taken from the strip mine pit was identified by Gene Schmitt as the one appellant sold to him and which was stolen from his Smitty’s Auto Sales lot. The truck which was found fit the general description given by Schmitt of the truck appellant sold to him. Schmitt saw the truck before it was damaged, while it was being removed from the strip mine pit, and after it was removed. It had the same license tag as the truck appellant sold to Schmitt and a Smitty’s Auto sticker Schmitt had placed over a Lonnie Russell sticker. Joyce Scott’s truck was bought from the Lonnie Russell Ford dealership. The truck recovered from the pit had whitewall tires and according to Schmitt “ . . . still had the wax on it.” Schmitt said he replaced the tires on the truck he bought from appellant with “port-a-wall tires” and had the truck cleaned. According to Schmitt he noticed, as the truck was being cleaned, that it had a little dent in the back of the cab on the right side and that it had had a camper on it. However, he observed no glue on the dashboard and stated he normally did not clean the ashtrays of vehicles he was preparing for resale.
Schmitt testified, without objection, that the license tag on the truck he bought from appellant was bought for Joel McCumby and that William Brooks signed for it. He said the man, apparently at the Jefferson County Courthouse, with whom he had a telephone conversation, told him the purchaser of the tag originally got a “car tag” then returned it for a “truck tag.” Schmitt was also told that the man who purchased the tag said he got the truck from the Phenix City Auto Auction and the truck had a dealer’s tag. Further, Schmitt testified, without objection, that when he went to the address he was given for McCumby, “ . . . one of the neighbors said that Mr. McCumby was an old man and was in a nursing home or a mental institution or something.” Also without objection, Schmitt testified that the “motor or serial number”, on the bill of sale he received for the truck, was for a Ford pickup truck which was originally sold in Tennessee. According to Schmitt, Lonnie Russell Ford was not in Tennessee.
After the State rested, the defense moved to exclude the evidence and for a directed verdict; both motions were overruled.
Harland Bruce Dean, a half-owner of an automobile lot in Tarrant City, testified, for the defense, that appellant brought a dark green 1974 Ford “custom” pickup truck to his lot on a Friday during the last of October or before November 11, 1975. He said the truck was “pretty close to the color and the year” of the truck shown in the four pictures of the truck recovered from the strip mine pit. However, Dean admitted he could not tell if it was the same pickup truck depicted in the pictures.
Defense witness, Diane Fatia, said she saw appellant driving a dark green 1974 Ford pickup truck twice during a period of a week or five days around Halloween or the first week of November, 1975.
Kelsey Steadman, the custodian of the Jefferson County Department of Revenue records of vehicle license tag receipts, testified, for the defense, that the tag receipt for the tag found on the truck recovered from the strip mine pit was issued on October 24, 1975. The receipt showed Joel McCumby as the supposed owner, and that a William Brooks bought the tag for McCumby and signed for it. Also, the receipt indicated the vehicle the tag was issued for was a 1974 Ford, “PU F-100.” Steadman also testified that on October 24, 1975, one could simply write a bill of sale and obtain a tag based on the information in it.
*71 Appellant, R. D. Eddy, testified in his own behalf. He denied knowing the truck was stolen and contended he purchased the “pickup Ford” from Joel McCumby on October 28, 1975, for $1,500.00, cash; Appellant testified he did not know McCumby, whom he stated identified himself by way of a driver’s license and from whom he obtained a bill of sale, which was admitted into evidence. Eddy admitted he sold the truck to Gene Schmitt at the “Eastwood Mall Auction” on November 3, 1975.
Gene Schmitt, when recalled as a rebuttal witness, testified that he went, after the truck was taken from his lot, to appellant’s address, as shown on the bill of sale he received at Auction City, U.S.A., and found a vacant house. Further, Schmitt stated, without objection, that when he tried to call the appellant’s telephone number as shown on the bill of sale he was told “ . the number was disconnected, out of operation or something. No answer.”
Bobbie Williams, a rebuttal witness for the State, testified that she rode with Joyce Scott on numerous occasions in her “1974 custom F-100,” including November 3, 1975, “the same day the truck was missing.” She identified the truck recovered from the strip mine pit as the one Joyce Scott had before November 3, 1975.
I
The indictment followed T. 15 § 259, Code of Alabama 1940, Recomp.1958, Form 91. It alleged the truck was “ . . . the personal property of Joyce Scott. . . . ” During the trial in a motion to dismiss the case and later in a motion for new trial, which were both overruled, the appellant maintained there was a fatal variance between the indictment and proof. He contended the evidence showed Joyce Scott’s husband was the owner of the truck, and not Joyce Scott, as alleged in the indictment. Appellant now raises this point on appeal.
During the trial the following indicia as to the ownership of the truck were produced:
(1) Joyce Scott’s testimony that her and her husband’s money was used to make the down payment and payments on the truck.
(2)(a) A “CERTIFICATE OF INSURANCE-CREDIT LIFE — CREDIT DISABILITY from Ford Life Insurance Company” on Artis Edward Scott, Joyce Scott’s husband.
(b) A “FINANCING STATEMENT— UCC — 1” from Ford Motor Credit Company which shows Artis Edward Scott and Joyce Scott as debtors on the truck.
(c) A “NOTE — SECURITY AGREEMENT INCLUDING LOAN STATEMENT AND DISCLOSURES REQUIRED BY STATE AND FEDERAL LAW” which shows Artis Edward Scott’s name typed at the top under the heading “NAME (BORROWER(S)),” was signed by Artis Edward Scott as the borrower under an insurance notice, and signed by Artis Edward Scott and Joyce Scott at the bottom of the instrument as borrowers.
(3) The 1974 and 1975 license tag receipts for the truck were in the name of A. E. Scott, but Joyce Scott said she “went and got” the tags.
(4) Joyce Scott testified that she and her husband used the truck, but she used it “most of the time” to sell produce. The gas receipts signed by Joyce Scott also showed her use of and purchase of gas for the truck.
Even assuming appellant’s interpretation of the evidence as to ownership was correct, there was no error in the trial court’s rulings. In Dudley v. State, 19 Ala.App. 519, 98 So. 490, which was reversed on a ground not relied upon herein, the appellant was convicted of buying, receiving, concealing, etc., stolen property. The property in question was a copper worm from a still which was seized as contraband by the sheriff, R. T. Ragland. The worm was stolen from Ragland’s office and later found in a still operated by the appellant, Dudley. To the contention the worm was not Rag-land’s as laid and that no one had any property rights therein, the court said:
*72 “The possession of the sheriff was not an unlawful possession. The possession by the sheriff does not necessarily carry with it the legal title. The ownership of property stolen is properly laid in the party in possession.” [Citation omitted.]
Further, ownership is properly laid in the bailee of property which is stolen. Leverett v. State, 18 Ala.App. 578, 93 So. 347, reversed on other grounds; Gullatt v. State, 24 Ala.App. 11, 130 So. 169, reversed on other grounds; Ex parte Economu, 211 Ala. 237, 100 So. 85; Williams v. State, 19 Ala.App. 472, 98 So. 136; Poole v. State, 28 Ala.App. 37, 178 So. 238. It is recognized that in the latter four cases the offense was larceny. The forms for indictments for grand larceny and receiving or concealing stolen goods, respectively Forms 66 and 91, T. 15, § 259 Code of Alabama 1940, Recomp. 1958, both require allegations as to whose personal property was stolen. The purpose of the allegations in both indictments is to inform the accused of whose property was stolen and to prevent double jeopardy by identifying the particular transaction. Thus there should be no distinction between such cases as to the requirements for proof of ownership. The facts show Joyce Scott was in legal possession of the truck, and was a bailee due to her possession and control of it. The constitutional requirements that the defendant be made aware of the nature of the charge against him were met. Therefore, the court’s rulings on the motions were correct.
Rebuttable presumptions of ownership of a vehicle are raised by a bill of sale or a license tag receipt (Whistenant v. State, 50 Ala.App. 182, 278 So.2d 183), possession of the vehicle (see Vaughan v. Borland, 234 Ala. 414, 175 So. 367), and use of the vehicle (Holman v. Latady, Andrews & Co., 220 Ala. 112, 124 So. 284). This list is not all inclusive and the other evidence presented at trial should be given equal weight to that given the items listed above in determining ownership.
Joint contribution to an enterprise gives rise to the presumption of joint ownership. See Scott v. State, 55 Ala.App. 318, 314 So.2d 921. Legal possession is referred to the husband or wife who has title, if that can be ascertained, when there is a joint possession by them. However, joint possession of personal property by a husband and wife “ . . . raises a presumption of joint ownership, which gives way to direct or circumstantial evidence to the contrary, sufficient to lead to a different conclusion.” Vaughan v. Borland, supra.
No title was produced. In fact, there was no motor vehicle title registration law in this state when the truck was purchased. Thus, the evidence was in conflict as to whether Artis Edward Scott owned the truck alone, or if he and his wife, Joyce Scott, owned the truck jointly. However, the evidence, particularly the joint possession and use of the truck, and joint contributions to the down payment and payments for it, pointed strongly to the joint ownership of the vehicle by Joyce Scott and her husband. We hold that the ownership was joint, since there was an absence of evidence sufficient to lead to a different conclusion.
In an indictment for buying etc. stolen property, if the ownership of the property is joint, it is sufficient to allege ownership in either party. T. 15 § 245, Code of Alabama 1940, Recomp.1958, and Scott, supra (wherein, it should be noted, the appellant was convicted for buying etc. stolen property). Further, as noted above, there should be no distinction between larceny and buying etc. stolen property cases as to the requirements for allegations or proof of ownership of the property stolen. Therefore, the following larceny case also supports this holding: Smith v. State, 25 Ala.App. 339, 146 So. 426, reversed on other grounds. See Nix v. State, 33 Ala.App. 603, 36 So.2d 452; Lowe v. State, 32 Ala.App. 176, 22 So.2d 618.
Ownership was therefore properly alleged and proven to be in Joyce Scott, since she was a joint owner of the truck in question.
II
Appellant contends the repeated attempts by the district attorney in argument to *73 implicate him as the one who stole the truck from the Woolco parking lot and from the Smitty’s Auto Sales lot, improperly prejudiced the jury by referral to misconduct not in issue.
During the cross examination of the appellant by the district attorney the following occurred:
“Q Isn’t it a fact that then you went looking for a truck to fit that description to steal?
“A No I didn’t.
“Q Isn’t it a fact that on November third, 1975, that you found this lady’s truck and stole it and then took it down to the auto auction? “MR. SHOTTS: Judge, I’m going to object to this line of questioning. “THE COURT: Sustained.
“MR. BLACK: That’s all.”
This is the only question during trial that referred to one of the other offenses of which appellant complained and the court ruled favorably to the appellant on his counsel’s objection to it. This question, and resulting objection and ruling, is set forth merely to illustrate the atmosphere of the trial on this issue.
During the district attorney’s argument the following occurred:
(1) “MR. BLACK: . . . That’s one thing that they overlooked, whoever stole the car, which I submit to you was the defendant, R. D. Eddy.
“MR. SHOTTS: Your Honor, I object to this as being improper argument. The defendant is not charged with grand larceny. I would like to remind Mr. Black that the charge is buying and receiving and concealing stolen property.
“THE COURT: That’s what the charge is, Mr. Black, it is not grand larceny. Proceed.”
(2) “MR. BLACK: I’ll tell you this, the best way to prove that when he had it he knew it was stolen is to prove that he’s the one who stole it.
“MR. SHOTTS: Your Honor, I’m going to object to that as being an improper statement.
“THE COURT: Sustained. Sustained. The very element of buying and receiving is that he did not steal it.”
(3) “MR. BLACK: How do you make sure that you don’t get caught later? You know who bought it, you sold it to him, and you go get it.
“MR. SHOTTS: Your Honor, I object to that as an improper inference in that in this case, the sole issue that we are trying is the buying and receiving of this automobile. Mr. Black is trying to infer to the jurors things of other improper conduct for which not only has he not been indicted but there is no basis for such. “THE COURT: Overruled.”
(4) “MR. BLACK: If anybody else was the one who took that car from the lot, you better believe
“MR. SHOTTS: There has been no charge of grand larceny in this case. I object to this.
“THE COURT: The jury understands that. Overruled. He can argue any circumstances that he might draw. What he says is not evidence.’.’
(5) “MR. BLACK: Of course, he says this is not the same car. That’s the only issue. If it’s the car that he sold at the auction, he has to know that it was stolen because he sold it two hours later.
“MR. SHOTTS: Your Honor, I strenuously object to this. It is improper and Mr. Black knows it is improper.
“THE COURT: Are you talking about the stealing of the car?
“MR. SHOTTS: Yes, sir.
“THE COURT: I have instructed the jury and I will instruct the jury along those lines and what the elements are that go to make up this. I sustain the objection. I’ll explain it.”
(These parts of the argument have been numbered such that they may be referred to by number.) Further during the district attorney’s argument, the court gave the following instructions go the jury:
*74 “Ladies and gentlemen, of course, each lawyer can argue the inferences that he draws from the facts. They can argue any circumstance that they think is reasonable from what they conclude the facts to be in certain aspects of the law. Ultimately, of course, you all determine what the facts are and I tell you what the law in the case is. You may proceed.”
Ordinarily evidence of distinct and independent offenses, and prior offenses is not admissible. However, there are numerous exceptions to this rule. McMurtrey v. State, 37 Ala.App. 656, 74 So.2d 528; McCary v. State, 39 Ala.App. 642, 107 So.2d 903. Counsel for appellant argues that the thefts imputed to the appellant by the prosecutor could not be brought out during the trial and thus should not have been allowed in argument, since argument should be based on what is in evidence.
This court stated in Scott v. State, 47 Ala.App. 509, 257 So.2d 369:
“Ordinarily there are three situations in which improper argument may be the basis for reversal. The first of which is an argument which is so grossly improper and highly prejudicial as to be ineradicable by proper ruling of the judge. Anderson v. State, 209 Ala. 36, 95 So. 171. Second, is argument which in its cumulative effect creates an atmosphere of bias and prejudice which no remarks by the trial court could eradicate. Blue v. State, 246 Ala. 73, 19 So.2d 11. It differs from the first type of improper argument in that no single remark would be sufficient justification for reversal. Instead, the cumulative nature of the remarks creates an atmosphere of prejudice which requires reversal. Finally and obviously, is prejudicial argument which the judge fails to rule on properly.”
To the objections to the second and fifth part of the argument the court ruled favorably to the appellant. There was no request the remarks be excluded from the jury. These parts of the argument were not so highly prejudicial that their unfavorable influence could not have been eliminated by instructions by the court. There was thus no reversible error in regard to the second and fifth parts of the argument when taken separately. Hipp v. State, 47 Ala.App. 580, 258 So.2d 920.
In Cosby v. State, 269 Ala. 501, 114 So.2d 250, the Supreme Court stated:
“ . . . Counsel for the State and the defendant are allowed considerable latitude in drawing their deductions from the evidence and the propriety of the argument of counsel depends upon the particular issues, facts and atmosphere of each case. . . . ” [Citations omitted.]
The elements of buying etc. stolen property, and thus the basic issues of proof for the offense, are:
“ . . ■ (1) That the goods in question had been feloniously taken and carried away, as charged in the indictment, by some one; (2) that the defendant bought, received, concealed, or aided in concealing these goods, knowing at the time that they were stolen; and (3) that he so bought, received, concealed, or aided in concealing these goods knowing that they were stolen, and not having the intent to restore same to the owner . . ..” [Citations omitted.] Jordan v. State, 17 Ala.App. 575, 87 So. 433.
Since knowledge the goods possessed were stolen is an issue, it is a legitimate subject of argument. Possession of recently stolen property by a person who is unable to satisfactorily explain the possession, gives rise to a presumption the person is guilty of buying etc. stolen goods. Baker v. State, 35 Ala.App. 596, 51 So.2d 376, reversed on other grounds; Character v. State, 51 Ala.App. 589, 287 So.2d 916. Therefore, recent unsatisfactorily explained possession of stolen property also gives rise to a presumption the person in possession knew the goods were stolen. There were thus sufficient facts to support the prosecutor’s argument in part five and it was proper for this reason also.
Since whether appellant concealed the property is in issue, it is a proper subject of argument. The third part of argument can be interpreted as an allegation of *75 further concealment which is relevant argument to the offense charged. Further, the prosecutor does not seem to state this as a fact but as a mere deduction or argument which may be based on the second disappearance of the truck and its being placed in a strip mine pit. Part three of the argument was thus not error. Cross v. State, 68 Ala. 476; Cosby, supra.
There was no clear ruling by the court on the first objection. The best procedure is for the court to make an express ruling in the record. See Zeigler v. State, 52 Ala.App. 501, 294 So.2d 468; Harris v. State, 16 Ala.App. 509, 79 So. 270. A ruling may be determined from the surrounding procedure or circumstances. See Zeigler, supra. However, here, since it is impossible to determine how the jury considered the first part of the argument in light of the court’s statement, we shall consider it to be unfavorable to the appellant.
In the first and fourth parts of argument, it is unclear whether the prosecutor was referring to the initial theft from the Woolco parking lot or the later theft from the used car lot.
In referring to the later theft from the used car lot, it was permissible under the same reasoning given for the propriety of the third part of the argument.
If the first and fourth parts of the argument referred to the initial theft from the Woolco parking lot, it would also be admissible due to the facts and issues of this case. As noted above, permissible argument depends on the issues of the case. Here, knowledge by the appellant that the goods were stolen was in issue. Of course, a thief would know goods he stole were stolen. Here, there were facts from which it could be inferred that appellant was in possession of a recently stolen vehicle. From this possession, the inference he stole the truck could be drawn. Kilpatrick v. State, 43 Ala.App. 667, 199 So.2d 682. The arguments in parts one and four, if considered to mean appellant initially stole the truck from the Woolco parking lot, were proper. Sears v. State, 106 Tex.Cr.R. 219, 291 S.W. 547.
Due to the above, there is no need to consider the cumulative nature of the remarks. Further, the cumulative nature of the arguments was not raised, as such, by any objection or motion.
The prosecutor’s argument does not adequately fall within any of the three categories of Scott, supra, as to warrant reversal.
The facts and issues of this case make it distinguishable from the following cases, where the separate offenses mentioned in argument had no relevance to the issues of the cases and no basis in the facts of the cases: Davis v. State, 20 Ala.App. 463, 103 So. 73 (where the offense was carnal knowledge and the prosecutor in argument accused the defendant of the unrelated offense of being the father of a bastard child); and Whitman v. State, 41 Ala.App. 124, 124 So.2d 275 (in which the appellant was accused of transporting five gallons or more of prohibited liquor and the prosecutor argued he was a “bootlegger,” the peddler and illegal seller of intoxicating liquor, which the court held was irrelevant to the issues and unsupported by the evidence).
We find no prejudicial error in the record.
AFFIRMED.
All the Judges concur.