HARRIS, Presiding Judge.
Appellant was convicted of buying, receiving or concealing stolen property, the value of which was set by the jury at $7,000. Appellant was sentenced by the trial court to a term of four years in the penitentiary. At arraignment, in the presence of counsel, appellant entered a plea of not guilty. Following sentencing, he gave notice of appeal and trial counsel represents him on this appeal.
Appellant was charged by indictment with buying, receiving, concealing, or aiding in concealing one two-door Lincoln automobile, valued at $9,675, the personal property of Victor C. West, knowing that it was stolen and not having the intent to restore it to the owner.
A motion for new trial was timely filed on grounds, among others, as follows: (1) there was a fatal variance in the pleadings and proof in that the indictment averred ownership of the stolen property in Victor C. West and the proof was that ownership was in West Food Services, Inc., a corporation; and (2) the trial court erred in allowing the jury to separate without consent of the appellant. Appellant also filed an amended motion for new trial, attaching affidavits of appellant and his counsel that appellant did not consent to separation of the jury. Following a hearing, the motion for new trial was denied.
*1260 The State’s evidence tended to prove that appellant purchased a 1975 Lincoln Continental Mark IV, which was the same vehicle stolen from Victor C. West in Birmingham. Appellant was in possession of the car when it was located by police.
Victor C. West, a resident of Mississippi, testified that his 1975 silver Lincoln Mark IV had been stolen in Birmingham on April 11, 1976. The car was locked and Mr. West had the key. West produced at trial copies of the original invoice, bill of sale and application for Certificate of Title.
On October 20, 1976, Mr. West identified a 1975 silver Lincoln at Birmingham Wrecker Service as the car stolen from him. The keys to his car, still in his possession, fit every lock except the passenger door lock which was broken. In addition, he identified the Lincoln as his through other physical markings unique to his car.
Mr. West testified that he purchased the car and as president of West Food Services, Inc., signed the Certificate of Title application; that the car had been in his continuous possession or control from the time it was bought until April 11,1976, and that he estimated its value when stolen at $9 — $10,-000. The purchase price was $10,800. He also testified that the Lincoln was primarily driven by his wife in her capacity as corporate Secretary of West Foods Services, Inc., but he also drove it occasionally.
Sergeant Wideman of the Birmingham Police Department, Auto Theft Detail, testified that he located the 1975 Lincoln at appellant’s residence in Birmingham on October 5, 1976. Appellant told the officer the car belonged to him and gave him permission to examine the car.
Sergeant Wideman was qualified as to training in vehicle identification. He then testified that the original vehicle identification number plates on the Lincoln had been removed. The number on the dash was not a true vehicle identification number plate, but a number stamped onto plastic tape which identified the car as a 1974 model. He further testified, over objection, that the motor number on the car found at appellant’s residence was a derivative of the correct vehicle identification number on the Certificate of Title of the stolen Lincoln, thus establishing a positive identification.
The bill of sale and tag receipt produced by appellant bore the same number found on the dash tape and indicated the car was a 1974 Lincoln, purchased by appellant from James Morton. The address for Morton on the bill of sale was a rural route in Sipsey, Alabama. James Morton had not been located and the address was nonexistent. The date of sale was June 18,1976. At the conclusion of the State’s evidence, defendant moved to exclude. The motion was denied.
The classified billing department manager of the Birmingham News testified for appellant that an ad was run on June 17, 1976, by a Mr. Morton to sell a 1974 Continental Mark IV, but no records were kept as payment was made by cash.
Appellant testified in his own behalf that he had called a Mr. Morton in response to the newspaper ad. Mr. Morton brought the car to appellant’s home. Appellant paid him $6,300 in cash for the car. Appellant did not purchase a new tag for the car, but continued to use the tag registered in the name of James Morton.
Two witnesses testified that appellant’s general reputation in the community was good.
On rebuttal, the State introduced testimony that the telephone number in the newspaper ad run by Mr. Morton was that of a public pay station at Wald Park in Vestavia, and that the number had been the same for at least three years.
Appellant’s first contention is that the trial court allowed the jury to separate without his consent, placing upon the State the burden to affirmatively show, upon motion for new trial, that no injury to appellant resulted from the separation. This contention is without merit.
After the jury had been selected and the oath administered in this cause, the following occurred:
“THE COURT: All right, is it agreeable for the jury to separate for the night? “MR. BARNETT: Yes, sir, it is agreeable with the Defendant, Your Honor.
*1261 “THE COURT: What about the State? “MR. BLACK: Yes, Your Honor.
“THE COURT: All right, the State had already said so, I just wanted to _ _ all right, they will separate for the night, and I will put it this way, if it suits you, unless there is a request by one of you, we will understand that the agreement, will that be all right to continue, unless you let me know to the contrary.
“MR. BARNETT: Except, Judge, I would like to make one statement. I ran into this problem once before.
“THE COURT: Yeah.
“MR. BARNETT: When the jury begins their deliberation than I would want to withdraw my right for the jury to separate.
“THE COURT: Well _ . you _ . all right.
“MR. BARNETT: Because I had run into that problem one time before and I don’t want to have it ever happen again.
“THE COURT: Yes, all right.
“You can let them back in now if they are ready to come back in.”
The trial court then instructed the jury as follows:
“Ladies and gentlemen, you are about to be excused for today, and you will be able to separate and go home, but be sure to keep in mind the instructions that I gave you; not to talk to anybody or let anybody talk to you about the case. That applies to anybody, don’t talk with anybody about the case or let anybody talk to you about the case, as I say, don’t even talk with one another about the case until the case is submitted to you for your verdict.”
The judgment entry reflects that appellant was present on this occasion. Further, the evidence taken on the motion for new trial shows that defense counsel consulted with the appellant prior to the agreement to separate and that appellant told him to do “whatever he thought best.” According to the record on the hearing it was also the recollection of the prosecuting attorney that when appellant’s counsel stated to the court that separation was “agreeable with the defendant,” appellant nodded his head affirmatively, although appellant testified that he did not recall so nodding in agreement. The evidence presented a question of fact for the trial judge and every presumption will be indulged by this court in favor of the ruling thereon. Binion v. State, 57 Ala.App. 234, 327 So.2d 729.
These circumstances adequately demonstrate that appellant personally consented to the separation of the jury as required by Code of Alabama 1975, Section 12-16-9. That section provides that the court may allow the jury to separate in a felony case without a presumption of prejudice against the accused upon consent of the accused, his counsel and the prosecuting attorney. Appellant having thus consented to the separation, he may not place the State in error for failing to affirmatively show that he was not injured thereby. When consent of the necessary parties is given, under the Statute the burden falls upon the accused to establish prejudice. Wright v. State, 57 Ala.App. 401, 328 So.2d 650.
Appellant relies on the decision of the Alabama Supreme Court in Nelson v. State, 253 Ala. 246, 43 So.2d 892, to support his contention that consent of counsel is insufficient to supply lack of consent by the accused. In Nelson the Court found that the accused did not enter into the agreement nor was he consulted. The facts therein are thus distinguished from those presented here, and error cannot be predicated upon that authority.
Appellant further contends that there was a fatal variance in the indictment and the proof. The indictment alleged personal ownership in Victor C. West. The evidence showed ownership in a corporation, West Food Services, Incorporated, of which Victor C. West is president. The evidence further tended to show however that Victor C. West purchased the automobile and signed the Certificate of Title application as the authorized representative of the corporation, that the car was continuously in his possession or control from the time it was purchased until the time it was stolen in Birmingham, and that the car was in his lawful possession at the time it was stolen.
*1262 It can be seen from the evidence that Victor West, President of West Food Services, Inc., and his wife, Secretary of West Food Services, Incorporation, were the only two people authorized to drive the 1975 Lincoln, and that it was in fact bought for their use. The corporation may have been the record owner of title of the vehicle but the useful owners were Victor West and his wife.
It has been held in this state that ownership is properly laid in the bailee or the party in lawful possession of property which is stolen. Eddy v. State, Ala.Cr.App., 353 So.2d 67.
A careful search of the record reflects no error injuriously affecting the substantial rights of the appellant. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.